1

2

3

4                                                                **E-FILED on** ___3/19/10___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   GEOFFREY NELSON FOWLER,                    No. C-02-03834 RMW

13                 Petitioner,

14          v.                                  ORDER SETTING EVIDENTIARY
                                                HEARING AND DENYING IN PART
15   GAIL LEWIS, Warden of the California State PETITION FOR WRIT OF HABEAS
     Prison at Pleasant Valley,                 CORPUS
16
                 Respondent.                    **[Re Docket No. 1]**
17

18

19          Petitioner Geoffrey Nelson Fowler petitions for a writ of habeas corpus under 28 U.S.C. §

20   2254.  Petitioner seeks habeas relief based on claims of: (1) ineffective assistance of counsel, (2)

21   jury misconduct, (3) improper restriction on his impeachment of the victim, (4) prosecutorial

22   misconduct, (5) improper admission of evidence of the full extent of the victim's injuries, and (6) the

23   cumulative effect of these constitutional violations.  For the reasons set forth below, the court finds

24   that an evidentiary hearing is warranted on petitioner's claim that he was denied effective assistance

25   of counsel based on trial counsel's failure to advise him of a plea offer and denies the petition for

26   writ of habeas corpus in all other respects.

27

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

# I. BACKGROUND

On October 15, 1996, petitioner entered a Quick Stop Market in Hayward to purchase orange juice and soup.  Petitioner brought the items to the counter where the victim, Davinder Singh, was working as a cashier.  Singh charged petitioner $1.89 for the orange juice, but the marked price was actually $1.69.  Petitioner was upset by the overcharge and yelled at Singh.  Singh realized he overcharged petitioner and returned the twenty cents.  Petitioner left the store.  Within a few minutes, petitioner returned to the store and, while standing directly in front of the cashier's counter, pointed a gun at Singh from about five or six feet away.  After a brief exchange of words, Singh reached behind his back.  Petitioner shot Singh in the chest.  Petitioner admitted after being questioned by the police that he shot Singh.

On August 4, 1997, a jury convicted petitioner of premeditated attempted murder, possession of a destructive device, and possession of an assault weapon.  The jury also found that petitioner had personally used a firearm and inflicted great bodily injury.  Petitioner was sentenced on September 30, 1997 to a life term for the premeditated attempted murder and a nine-year term on the remaining counts, to be served consecutively.  Petitioner appealed his conviction to the First Appellate District Court of Appeal for the State of California.  On May 28, 1999, the Court of Appeal, in an unpublished opinion, affirmed his conviction.  Petitioner filed a timely petition for review in the California Supreme Court.  On September 22, 1999, the California Supreme Court denied review. Petitioner had until December 21, 1999 to seek certiorari from the United States Supreme Court.

Under the one-year time period imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), petitioner had until December 21, 2000 to file a petition for writ of habeas corpus in federal court or otherwise toll the running of the one-year statute.  Petitioner tolled the running of the statute by properly filing a petition for writ of habeas corpus in the state supreme court on December 15, 2000.  The state supreme court summarily denied the petition on July 17, 2002, and the denial became final on August 17, 2002.  Petitioner timely filed a petition for writ of habeas corpus in this court on August 8, 2002.

## II.  ANALYSIS

**A.      Legal Standard**

A court may grant a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  The court may grant the writ only if the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

For a state court's decision to be contrary to clearly established federal law, it must apply a rule that contradicts the governing law set forth in Supreme Court cases, or confront a set of facts that are materially indistinguishable from a Court decision and nevertheless arrive at a different result from Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  A state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The court cannot grant a habeas petition as being an "unreasonable application" of federal law merely because, in its opinion, the law was incorrectly applied in a case.  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Rather, the state court's application of federal law must be "objectively unreasonable" in order to justify granting the petition.  *Id.*  The review of state court decisions is highly deferential, and state court decisions should be given the benefit of the doubt.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"In reviewing a state court's summary denial of a habeas petition, this court must look through the summary disposition to the last reasoned decision.  However, when no reasoned state court decision denying a habeas petition exists, the federal court should perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable."  *Dung The Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005).  "Independent review of the record is not de novo review of the constitutional issue."  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  A court performing an independent review of the record must undertake its own analysis,

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   while also presuming that state courts know and follow the law and giving state court decisions the

2   benefit of the doubt.  *Id.* at 854 (quoting *Woodford*, 537 U.S. at 19).  The court should "vigilantly

3   search for an interpretation . . . which would avoid attributing constitutional error to the state court.

4   But [the court should] stop short of adopting an implausible or strained interpretation."  *Id.*  In other

5   words, when performing an independent review, habeas relief should be granted only if the state

6   court "clearly erred in its application of Supreme Court law."  *Pirtle v. Morgan*, 313 F.3d 1160, 1167

7   (9th Cir. 2002).

8          **B.      Petitioner's Claims**

9          Petitioner alleges that his conviction and sentence for premeditated attempted murder,

10  possession of a destructive device, possession of an assault weapon, use of a firearm, and infliction

11  of great bodily injury violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  In

12  particular, petitioner seeks habeas relief on the following grounds: (1) he was denied effective

13  assistance of counsel because of juror misconduct and because his trial attorney failed to advise him

14  of a plea offer made before trial, failed to present evidence of his mental disorders, and failed to

15  object to alleged prosecutorial misconduct; (2) he was denied due process and a fair trial because of

16  jury misconduct; (3) he was deprived of his right to confrontation and to present a defense by the

17  trial court's restriction of impeachment of the victim; (4) his rights to confrontation, due process, a

18  fair trial, and an impartial jury trial were violated by prosecutorial misconduct; (5) he was deprived

19  of due process and an impartial jury trial by admission of evidence of the victim's injuries, surgeries,

20  and pain and suffering; and (6) the cumulative effect of the alleged constitutional violations warrants

21  habeas relief.

22         Claims one, two, and six were raised in petitioner's state habeas petition to the state supreme

23  court.  The state supreme court summarily denied these claims, and there is no reasoned lower court

24  decision on these claims.  Therefore, the court must perform an "independent review" of the record

25  to determine whether the state supreme court denial was objectively unreasonable.  *Dung The Pham*,

26  400 F.3d at 742.

27         Claims three, four, and five were raised in petitioner's appeal and rejected by the state

28  appellate court in a reasoned decision.  With respect to these claims, the court applies the usual

ORDER SETTING EVIDENTIARY HEARING AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS—No. C-02-03834 RMW
CCL                                                                                            4

United States District Court
For the Northern District of California

1   AEDPA standard in determining whether the state court's decision was "contrary to, or involved an

2   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

3   the United States" or was "based on an unreasonable determination of the facts in light of the

4   evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### 1.    Ineffective Assistance of Counsel

6       A claim of ineffective assistance of counsel is cognizable as a claim for denial of the Sixth

7   Amendment right to counsel, which guarantees not only assistance, but effective assistance of

8   counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any

9   claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the

10  adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

11      In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner

12  must make two showings.  First, he must establish that counsel's performance was deficient, i.e., that

13  it fell below an "objective standard of reasonableness" under prevailing professional norms.

14  *Strickland*, 466 U.S. at 687-88.  Second, petitioner must establish that he was prejudiced by

15  counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

16  unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A

17  reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

18      Petitioner raises four ineffective assistance of counsel claims based on: (1) failure to advise

19  him of a plea offer made before trial, (2) failure to present evidence of his mental disorders, (3)

20  failure to object to prosecutorial misconduct, and (4) jury misconduct.  Petitioner's ineffective

21  assistance of counsel claim based on jury misconduct is addressed in the context of his

22  separately-alleged jury misconduct claim.  The court addresses petitioner's other ineffective

23  assistance of counsel claims below.

### a.    Failure to Advise Petitioner of Plea Offer

25      Petitioner asserts that trial counsel was deficient for failing to communicate a plea offer to

26  him.  According to petitioner, Paul Hora, the prosecutor, offered a plea bargain that would have

27  made him eligible for parole after seven years, and his trial counsel, Michael Thorman, failed to

28  advise him of this plea offer.  A defense attorney's failure to tell the defendant that the government

ORDER SETTING EVIDENTIARY HEARING AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS—No. C-02-03834 RMW
CCL

United States District Court
For the Northern District of California

1   has made a plea offer may constitute ineffective assistance of counsel.  *See United States v.*

2   *Blaylock*, 20 F.3d 1458, 1465-69 (9th Cir. 1994).

3   　　Respondents dispute whether Hora ever made this plea offer.  Under the AEDPA, "a

4   determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

5   shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

6   28 U.S.C. § 2254(e)(1).  In this case, however, the state supreme court did not make any factual

7   findings.  The court therefore independently reviews the evidence on this disputed factual issue.

8   　　Petitioner offers declarations by jurors stating that Hora spoke to them after the trial about a

9   plea bargain he had offered petitioner, which would have allowed petitioner to be eligible for parole

10  after seven years.  One juror declared, "Mr. Hora also told us that Mr. Fowler had been offered a

11  generous plea bargain – an offer to drop the premeditation charge attached to the attempted murder

12  count and the weapon charges in exchange for a guilty plea.  Mr. Hora said this offer would have

13  allowed Mr. Fowler to walk out of prison at the end of seven years, but Mr. Fowler refused the

14  offer."  Pet. Ex. G ¶ 12.  Another juror declared, "Mr. Hora said that he offered to drop the

15  premeditated clause to the attempted murder count but Mr. Fowler declined the offer."  Pet. Ex. K ¶

16  11.  Petitioner's present counsel, Neoma Kenwood, declared that when she asked Hora about the

17  jurors' declarations, he responded, "What I offered would have allowed him to be eligible for parole

18  in seven years."  Pet. Ex. B ¶ 2.  According to Kenwood, Hora then retreated and refused to answer

19  any more questions because he did not want to help reverse petitioner's conviction.  *Id.*[1]

20  　　Other evidence in the record, however, indicates that no plea bargain allowing petitioner to

21  be eligible for parole after seven years had been offered.  Thorman, petitioner's trial counsel,

22  declared, "[t]he only plea agreement ever offered was a twenty-two year determinate term in state

23  prison on a non-premeditated attempted-murder with use of a firearm."  Pet. Ex. R ¶ 7.  He further

24

25  ──────────────

26  [1]  Respondent objects to Kenwood's declaration (but not the jurors' declarations) on hearsay
     grounds.  As an initial matter, Hora's statements to Kenwood appear to admissible under Federal
     Rule of Evidence 801(d)(2) (admission by a party-opponent).  In any event, the court can

27  appropriately consider Kenwood's declaration as an extension of petitioner's allegations in his
     habeas petition regarding what facts petitioner expects to be able to prove if granted access to court

28  process to compel Hora's testimony.

ORDER SETTING EVIDENTIARY HEARING AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS—No. C-02-03834 RMW
CCL

United States District Court
For the Northern District of California

1  stated, "I do not recall ever getting an offer that would have made [petitioner] eligible for parole in

2  seven years." *Id.* at ¶ 8.

3      Petitioner argues that the evidence now before the court proves that he is entitled to relief.

4  However, the declarations submitted contain conflicting evidence.  The juror declarations and

5  Kenwood's declaration suggest that Hora offered a plea bargain that would have made petitioner

6  eligible for parole after seven years.  Pet. Ex. B ¶ 2; Pet. Ex. G ¶ 12; Pet. Ex. K ¶ 11.  On the other

7  hand, the declaration by Thorman, petitioner's trial counsel, provides reason to believe no such plea

8  agreement had been offered.  Pet. Ex. R ¶¶ 7-8.  Further, the court owes deference to the state court's

9  result, even if its reasoning is not expressly stated.  *Sandoval v. Ulibarri*, 548 F.3d 902, 911 (9th Cir.

10  2008) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).  The court cannot conclude

11  based upon the current record that petitioner is necessarily entitled to relief. However, as explained

12  more fully below, the court concludes that an evidentiary hearing is necessary to determine whether

13  the state court's denial of petitioner's claim was based upon an unreasonable determination of the

14  facts. 28 U.S.C. § 2254(d)(2).

15      Petitioner contends that if the court is not prepared to rule in his favor based upon the

16  evidence of record, he is entitled to an evidentiary hearing to resolve the disputed facts with

17  admissible evidence.  Petitioner is entitled to an evidentiary hearing only if: (1) he was diligent in

18  developing the factual basis for his claim in state court; (2) the allegations in his petition would, if

19  proved, entitle him to relief; and (3) the state court trier of fact has not, after a full and fair hearing,

20  reliably found the facts.  *See Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005); 28 U.S.C. §

21  2254(e)(2).

22      "Under AEDPA, a failure to develop the factual basis of a claim is not established unless

23  there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's

24  counsel." *Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005).  Petitioner learned that Hora

25  allegedly made the plea offer in question only after his trial concluded and therefore could not have

26  raised this issue during his original trial.  Moreover, petitioner did develop the factual basis for this

27  claim in state court by submitting various declarations supporting this claim in his state habeas

28

petition.  Therefore, as petitioner did not fail to develop the factual basis of his claim in state court, he has met the first requirement for an evidentiary hearing.

In summarily denying petitioner's state habeas petition, the California Supreme Court did not afford petitioner a hearing on the dispositive factual issues relating to Hora's alleged offer of a plea agreement allowing parole in seven years.  Thus, petitioner has met the third requirement for an evidentiary hearing.  *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) ("If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts.").

To meet the second requirement for an evidentiary hearing, petitioner must show that if the factual allegations in his petition are true, he would be entitled to habeas relief.  For petitioner to be entitled to habeas relief on his ineffective assistance of counsel claim, he must show: (1) that his counsel was deficient and (2) that prejudice resulted from such deficiency.  *See Strickland*, 466 U.S. at 687-94.  Counsel's failure to convey a plea agreement constitutes unreasonable conduct under prevailing professional standards, *Blaylock*, 20 F.3d at 1465-66, satisfying the first *Strickland* prong. To meet the second *Strickland* prong, petitioner would have to show that "there was a reasonable probability that, but for his attorney's deficient performance, the result would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner claims that he would have accepted an offer making him eligible for release in seven years, though he admits that he declined the state's offer to drop the premeditation charge in exchange for a guilty plea and acceptance of a twenty-two year term in state prison.  In addition to his own declaration that he would have accepted such an offer, Pet. Ex. C. ¶ 5, petitioner has supplied declarations from his former attorneys which evince his amenability, both before and during trial, to negotiating a plea deal.  Robert Shipway, the assistant public defender who acted as petitioner's counsel through the preliminary hearing, declares that he made a ten-year offer which the deputy district attorney rejected.  Pet. Ex. W ¶ 3.  The fact that petitioner's attorney sought a ten-year sentence plea bargain supports petitioner's claim that had he known about an offer that would have

made him eligible for parole in seven years, he would have taken it.  In another declaration, Thorman, petitioner's trial attorney, states that petitioner was not opposed to admitting his guilt in exchange for a plea and that he would have advised petitioner to seriously consider the offer in question if counsel had understood such an offer to exist.  Pet. Ex. V ¶ 4.  Petitioner further offers declarations by family and friends stating that petitioner had hoped to settle with a guilty plea.  Pet. Ex. X ¶ 3; Pet. Ex. Y ¶ 4.  Finally, petitioner points to the disparity between the advantageous terms of the alleged plea bargain and the probable consequences of proceeding to trial: a life sentence on premeditated attempted murder plus several years for the additional charges, with no plausible chance of acquittal because he admitted to the shooting.  This disparity provides additional support for petitioner's assertion that he would have accepted the plea offer.

Respondent argues that petitioner's allegations are not sufficient to satisfy the second *Strickland* prong because petitioner's declaration that he would have accepted the plea offer is not "corroborated by independent, objective evidence," as required by *In re Alvernaz*, 2 Cal. 4th 924, 939 (1992).  However, the Ninth Circuit has criticized the *Alvernaz* rule as inconsistent with United States Supreme Court law: "the *Alvernaz* statement of such a universal requirement of corroboration is in substantial tension with *Strickland*'s discouragement of 'mechanical rules' that distract from an inquiry into the fundamental fairness of the proceedings, and with its holding that 'a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'"  *Nunes v. Mueller*, 350 F.3d 1045, 1055 n.6 (9th Cir. 2003).  In any event, petitioner has corroborated his declaration with independent evidence of the kind discussed favorably in *Alvernaz*.  Overall, petitioner has alleged facts which, taken as true, support a reasonable probability that but for his attorney's deficient performance the result would have been different.  This showing would, if established as true, satisfy the second *Strickland* prejudice prong.

Because the state courts failed to hold a hearing on the dispositive factual issues presented by petitioner's ineffective assistance of counsel claim relating to Hora's alleged plea bargain offer and because petitioner's allegations, if proved at an evidentiary hearing, would entitle him to habeas relief, an evidentiary hearing is required on this claim.  *See Phillips*, 267 F.3d at 973.

United States District Court
For the Northern District of California

**b.      Failure to Present Evidence of Mental Disorder**

Petitioner also claims that he was denied effective assistance of counsel because his trial counsel failed to present evidence of his mental disorders to negate the requisite mental state necessary for a conviction of premeditated attempted murder.  According to petitioner, this failure was caused by: (1) trial counsel's retention of Dr. Wornian, who was burdened by a conflict of interest based on his prior treatment of petitioner; (2) counsel's failure to provide Dr. Wornian with sufficient information to obtain an accurate and complete assessment of petitioner's mental state at the time of the offense; and (3) counsel's failure to provide Dr. Wornian with sufficient direction to obtain a forensic evaluation.

Tactical decisions of trial counsel deserve deference when:  (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  Here, Thorman, petitioner's trial counsel, declared that he retained Dr. Wornian because he had worked with him in other cases, and Dr. Wornian had always provided insightful and in-depth reports.  Pet. Ex. R ¶ 4.  Trial counsel also said he was aware that Dr. Wornian had treated petitioner prior to the shooting and felt that he would have more of a baseline for evaluating petitioner than other mental health professionals.  *Id.*  Thorman's decision to retain Dr. Wornian was based on strategic considerations and appears reasonable under the circumstances.  Thus, the state supreme court could reasonably find that trial counsel's conduct in retaining Dr. Wornian did not fall below an objective standard of reasonableness.

Likewise, the state court's denial of habeas relief on petitioner's claim that trial counsel failed to provide Dr. Wornian with sufficient information was not objectively unreasonable.  Absent a request for information from an expert, which petitioner does not allege, counsel does not have a duty "to acquire sufficient background material on which an expert can base reliable psychiatric conclusions."  *Bloom v. Calderon*, 132 F.3d 1267, 1277 (9th Cir. 1997).  Moreover, the record shows that Thorman acted reasonably by providing petitioner's psychiatric records from the University of California at Santa Cruz and Kaiser-Hayward, copies of police reports regarding the

United States District Court
For the Northern District of California

1  incident, and a copy of a handwritten statement of petitioner's account of the incident.  Pet. Ex. R ¶

2  5; Ans. Ex. A at 242.

3        Similarly, it was not objectively unreasonable for the state court to deny relief on petitioner's

4  claim that trial counsel failed to provide Dr. Wornian with sufficient direction.  Thorman testified

5  that he "hired Dr. Larry Wornian to provide an opinion as to Mr. Fowler's mental state."  Pet. Ex. R

6  ¶ 3.  More specifically, he states that in retaining Dr. Wornian he was seeking: (1) "information

7  relevant to Dr. Fowler's emotional state at the time of the offense as it might relate to the requisite

8  mental state necessary for conviction" and (2) "information from Dr. Wornian about Mr. Fowler's

9  potential for violence, information, which [he] could use in plea bargaining the case." *Id.*  In his

10  letter to Dr. Wornian, Thorman confirmed a prior conversation in which he retained Wornian to

11  evaluate petitioner and "render an opinion regarding his emotional status and his potential for

12  violence."  Pet. Ex. S.  Dr. Wornian's written report also indicates that he was requested to "offer an

13  assessment as to [petitioner's] overall psychological status . . . given that Mr. Fowler is charged with

14  a particularly egregious offense and has no prior criminal history."  Ans. Ex. A at 242.  Dr. Wornian

15  opined in his written report that "[t]here is nothing in Mr. Fowler's personae to suggest that the

16  shooting was premeditated action; instead, it was, unfortunately, an inappropriate and escalating

17  response to a situation that had rapidly spiraled out of control." *Id.* at 255-56.  Based on this

18  evidence, the state court could reasonably find that trial counsel provided adequate direction to Dr.

19  Wornian and conducted a reasonable investigation into petitioner's mental state.

20        Petitioner claims that he was denied effective assistance of counsel because Thorman failed

21  to present Dr. Wornian's testimony at trial.  Trial counsel does not recall why he did not call Dr.

22  Wornian as a witness but stated, "[k]nowing my practice, habit and custom, I believe that if Dr.

23  Wornian had helpful information on the mental state issues in the case, I would have called him. . . .

24  If I had access to mental state testimony supporting the theory that Petitioner did not premeditate, I

25  would have used it."  Pet. Ex. R ¶ 6.  The mere fact that counsel cannot recall the tactical basis for

26  his decisions does not rebut the presumption that counsel acted reasonably. *See Alcala v. Woodford*,

27  334 F.3d 862, 870-71 (9th Cir. 2003).  Moreover, "an attorney is entitled to rely on the opinions of

28  mental health experts in deciding whether to pursue [a mental disorder] defense." *Hendricks v.*

United States District Court
For the Northern District of California

*Calderon*, 70 F.3d 1032, 1038 (9th Cir. 1995). Though Dr. Wornian found nothing in petitioner's personae to suggest that the shooting was premeditated, his report stopped short of opining that petitioner lacked the capacity to form, or had not formed, the requisite mental state for premeditated murder at the time of the shooting. Ans. Ex. A at 255-56. Thus, the state court's denial of habeas relief on petitioner's claim that trial counsel failed to call Dr. Wornian as a witness was not objectively unreasonable. For the same reasons, it was not objectively unreasonable to deny habeas relief based on trial counsel's decision not to introduce petitioner's psychiatric records, which Dr. Wornian had analyzed in preparing his report.[2]

### c.      Failure to Object to Prosecutorial Misconduct

Petitioner argues that trial counsel provided ineffective assistance of counsel by: (1) failing to object to questions the prosecutor asked him on cross-examination; and (2) failing to object to the display of a bloody shirt. As to the first claim, petitioner admitted in his traverse that the California Court of Appeal rejected the claim in a reasoned decision and candidly conceded that the state court's decision was not unreasonable. Traverse at 52. Accordingly, the AEDPA bars relief on this claim.

On the second claim, petitioner does not dispute that the bloody shirt was properly entered into evidence but argues that trial counsel should have objected to it being unnecessarily displayed during the trial. The trial record shows that during a suppression hearing prior to jury selection, petitioner's trial counsel objected to the bloody shirt being displayed in a prominent matter when not being used as relevant evidence. Reporter's Transcript ("RT") at 168-69. The prosecution agreed that it would use the bloody shirt only when relevant and put it away with other evidence when not in use. *Id.* Petitioner's father declared that the bloody shirt was displayed on an easel during the prosecutor's opening statement and closing argument, during the examination of Singh, witness Daniel Walsh, crime scene technician Laura Martin, and during petitioner's cross-examination. Pet. Ex. D ¶ 6. At other times, it was taken off the easel and "leaned against a table or something in the

---

[2] Similarly, trial counsel's decision not to present evidence of petitioner's bronchial illness is not ineffective assistance of counsel and merits little discussion. Petitioner himself testified that he was suffering from a bronchial infection at the time of the shooting.

1   courtroom, where it was visible to the jurors." *Id.* Respondent argues that petitioner's father's

2   declaration is suspect because he is biased.

3         Even assuming the bloody shirt was indeed displayed at these times, this does not provide a

4   basis for habeas relief. It is not clear that the prosecution failed to abide by its promise to treat the

5   bloody shirt like any other piece of evidence by taking it off of the easel and leaning it against a

6   table while it was not being used as evidence. Thus, the state court could reasonably find that trial

7   counsel's decision not to make further objections on this basis did not fall below an objective

8   standard of reasonableness. Moreover, the state court could reasonably find that, to the extent the

9   bloody shirt was unnecessarily displayed, this error was not prejudicial and deny habeas relief on

10   this basis. *See United States v. Gibson*, 690 F.2d 697, 703–04 (9th Cir. 1982) (failure to make

11   evidentiary objections does not render assistance ineffective unless challenged errors can be shown

12   to have prejudiced the defense); *Weygandt v. Ducharme*, 774 F.2d 1491, 1493-94 (9th Cir. 1985)

13   (failure to object to prosecutor's improper closing remarks fell short of constitutional prejudice when

14   considered within "totality of the evidence"). The trial record shows that the bloody shirt was

15   relevant during the prosecutor's closing argument, during the examination of Singh and of the crime

16   scene technician, and during petitioner's cross-examination. RT 258, 454-55, 797-98, 841-42.

17   Hence, even if the shirt was also unnecessarily displayed during the prosecutor's opening statement

18   and during the examination of witness Daniel Walsh, the resulting prejudice from this additional

19   exposure is significantly less than if the failure to object had resulted in exposure to evidence that

20   the jury would not otherwise have seen. Thus, it would not be objectively unreasonable for the state

21   court to find that it is not reasonably probable that, but for trial counsel's failure to object to

22   unnecessary display of the bloody shirt, the verdict would have been different. Accordingly, the

23   court denies petitioner habeas relief on this ground.

          **2.**     **Jury Misconduct**

24

25         Petitioner alleges that his rights to due process, a fair trial, and effective assistance of

26   counsel were violated by: (1) the jury's use of a dictionary, (2) the foreman's creation of a summary

27   chart, (3) a juror's cell phone use during deliberations, (4) a juror's introduction of erroneous

28

**United States District Court**
For the Northern District of California

1  information about the need to reach a unanimous verdict on all counts, (5) the jury's engaging in

2  "horse trading" with respect to their votes, and (6) failure to adequately instruct the jury.

3        Respondent argues that petitioner's claims of jury misconduct are barred under California

4  law because they were not raised in the trial court.  However, the state supreme court denied the

5  state habeas petition without imposing the procedural bar requested by respondent, signifying its

6  rejection of the waiver argument.  *See In re Robbins*, 18 Cal. 4th 770, 814 n.34 (1998).  The state

7  supreme court's summary denial constitutes a denial on the merits.  *La Rue v. McCarthy*, 833 F.2d

8  140, 143 (9th Cir. 1987).   "If the last state court to be presented with a federal claim reaches the

9  merits, it removes any bar to federal court review that might otherwise have been available."  *Park v.*

10 *California*, 202 F.3d 1146, 1153 (9th Cir. 2000).  Therefore, there is no procedural bar to petitioner's

11 claims of jury misconduct.

12                **a.    Use of Dictionary**

13        Petitioner claims that use of a dictionary by the jury violated his Sixth Amendment rights.

14 Jury exposure to extrinsic evidence deprives a defendant of the rights to confrontation,

15 cross-examination, and assistance of counsel embodied in the Sixth Amendment.  *Lawson v. Borg*,

16 60 F.3d 608, 612 (9th Cir. 1995).  Respondent concedes that under California law, it was improper

17 for the jury to have a dictionary in the jury room during deliberations.  *See People v. Karis*, 46 Cal.

18 3d 612, 642 (1988).  However, respondent disputes whether the dictionary had been opened or used,

19 exposing the jury to extrinsic evidence.

20        Petitioner provides two juror declarations stating that the foreman had opened the dictionary

21 and looked up at least one word ("premeditation").    Pet. Ex. G ¶ 3; Pet. Ex. I ¶ 6.  According to one

22 juror,  the foreman merely read the dictionary definition out loud and then closed the dictionary.

23 Pet. Ex. G ¶ 3.  According to another juror, the foreman wrote dictionary definitions on a chart for

24 the jury to see.  Pet. Ex. I ¶ 6.  Respondent contends that these declarations are insufficient to show

25 that the dictionary had been opened or used, pointing to the fact that when the trial court asked about

26 the dictionary, the jury foreman told the court that the dictionary had not been opened or used for

27 any purpose, and none of the jurors contradicted his statement at that time.  RT 934; Pet. Ex. G ¶ 3.

28

ORDER SETTING EVIDENTIARY HEARING AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS—No. C-02-03834 RMW
CCL

United States District Court
For the Northern District of California

1    Even assuming that a dictionary had been improperly consulted, petitioner is entitled to

2    habeas relief only if he can establish that the extrinsic evidence had a "substantial and injurious

3    effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637

4    (1993); *see also Eslaminia v. White*, 136 F.3d 1234, 1237 n.1 (9th Cir. 1998) (rejecting contention

5    that the jury's consideration of extrinsic evidence was structural error, requiring automatic reversal,

6    and instead evaluating it under the harmless error standard).  When a jury is exposed to extrinsic

7    evidence, the danger is that petitioner could be prejudiced because he did not have the opportunity to

8    counter that evidence through confrontation or cross-examination.  In this case, however, petitioner

9    does not claim that the dictionary definition of "premeditation" allegedly read to the jury introduced

10   any new information or was inconsistent with the jury instructions.  To the contrary, one of the juror

11   declarations states that the dictionary definition merely "solidified and reinforced" the portion of the

12   jury instructions which stated that premeditation meant "considered beforehand."  Pet. Ex. G ¶ 5.  In

13   the absence of evidence suggesting that the possible, one-time consultation of a dictionary had a

14   "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at

15   637, the state court's denial of habeas relief on this ground was not objectively unreasonable.

### b.    Jury Foreman's Chart

17   Petitioner claims that the jury foreman's creation of a summary chart containing his views as

18   to the elements of premeditation and deliberation violated petitioner's rights to due process, effective

19   assistance of counsel, and a fair jury trial.  Petitioner offers five juror declarations stating that the

20   jury foreman took the jury instructions home with him overnight, created a chart with truncated

21   definitions of the elements of the charges, and presented this chart to the jury for use in

22   deliberations.  Pet. Ex. G ¶ 4; Pet. Ex. H ¶ 5; Pet. Ex. I ¶ 3; Pet. Ex. K ¶¶ 2-4; Pet. Ex. L ¶ 3.

23   According to petitioner, the foreman's creation of a chart on his own, while outside of the jury room,

24   violated his right to have each juror engaged in jury deliberations "which are the common

25   experience of all."  *People v. Collins*, 17 Cal. 3d 687, 693 (1976).

26   *Collins*, however, dealt with the substitution of an alternate juror after deliberations had

27   begun and the need for deliberations to begin anew so that the new juror would have the benefit of

28   the deliberations of the other eleven jurors.  *Id.*  In this case, there is no evidence that jurors were

**United States District Court**
For the Northern District of California

deprived of the benefit of full participation in deliberations because the foreman introduced a chart that he had created at home.  Petitioner does not allege that the foreman presented his chart and then refused to deliberate further.  Moreover, the fact that the foreman created his chart outside the jury room does not establish juror misconduct.  *See Bormann v. Chevron USA, Inc.*, 56 Cal. App. 4th 260, 265 (1997) (holding that there was no juror misconduct when one juror read to the jury a typewritten statement of her views of the evidence that she had prepared at home over the weekend).  Jurors are not prohibited from individually contemplating the evidence while they are separated, and "the permissibility of jurors' recording ideas that they wish to share in deliberations is consistent with the requirement and promise that all jurors actively and fully participate in those deliberations."  *Id.*  Accordingly, the court finds that the state court's denial of habeas relief on this ground was not objectively unreasonable.

### c.    Cell Phone Use

Petitioner alleges that a juror's use of her cell phone to speak to her children during deliberations violated his right to a unanimous jury verdict reached through deliberations "which are the common experience of all."  *Collins*, 17 Cal. 3d at 693.  According to petitioner, this deprived him of his constitutional rights to due process and a fair jury trial.  Petitioner offers various juror declarations stating that one juror received multiple calls from her children during deliberations due to a problem with childcare.  Pet. Ex. G ¶ 11; Pet. Ex. I ¶ 11;  Pet. Ex. J ¶ 11; Pet. Ex. L ¶ 7.  One of the jurors found these calls distracting.  Pet. Ex. G ¶ 11.

The juror's cell phone use during deliberations did not deprive petitioner of his constitutional rights.  While not ideal, the fact that a juror received calls from her children and "did not immediately get off the phone to deliberate" with the rest of the jury, Pet. Ex. G ¶ 11, does not rise to the level of a constitutional violation.  Petitioner has failed to show that the cell phone usage resulted in jurors failing to adequately participate in jury deliberations.  Moreover, even if the cell phone usage was somewhat distracting to one of the jurors, there is no evidence that it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  Therefore, the state court's denial of habeas relief on this ground was not objectively unreasonable.

### d.   Erroneous Information Regarding Need for Unanimity

Petitioner claims that a juror's introduction of erroneous information about the need to reach a unanimous verdict on all counts deprived him of his constitutional right to a verdict based on a jury deliberation free of extrinsic information.  Jury exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment.  *Lawson*, 60 F.3d at 612.

Many of the statements in the juror declarations submitted by petitioner in support of his claim are inadmissible under Federal Rule of Evidence 606(b), which prohibits jurors from testifying as to matters or statements occurring during the course of jury deliberations, as well as the effect of such matters or statements on any juror's mental processes or emotions in reaching a verdict.  However, Rule 606(b) does contain an exception for testimony about "whether extraneous prejudicial information was improperly brought to the jury's attention."  Under this exception, the following statements in the juror declarations are admissible:

> "One of the other jurors, who had previously served on a jury, stated that if we were not unanimous on any count or finding, the judge would just send us back to continue deliberating until we were unanimous on all counts and findings."  Pet. Ex. G ¶ 8.

> "More than one person on the jury said that we had to be unanimous on all of the counts and special findings and we had to reach verdicts on everything.  Some of the jurors, who had served on other cases, said that if we were not unanimous on any count or finding, the judge would just send us back to continue deliberating until we were unanimous on all counts and findings."  Pet. Ex. H ¶ 7.

> "I recall one of the jurors stated that she served on a previous jury and this was the way it worked.  I do not recall specifically what she said but I recall that we discussed the fact that we had to be unanimous on all counts and charges, including the question whether the attempted murder was premeditated, or else we would hang everything."  Pet. Ex. J ¶ 9.

These declarations are sufficient to show that erroneous outside information was introduced.[3]

For petitioner to be entitled to habeas relief, he must establish that this outside information had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  The statements in the juror declarations discussing the effect that exposure to this outside information had on the deliberative process are inadmissible under Federal Rule of Evidence

---

[3]  In fact, if the jury reaches unanimous agreement as to some counts and not as to others, the jury may render a verdict as to the charge or charges upon which they agree, leaving the remaining counts for retrial.  *Stone v. Superior Court*, 31 Cal. 3d 503, 517 (1982).

**United States District Court**
For the Northern District of California

606(b). Unlike in most extrinsic evidence cases, the outside information here does not shed new light on or otherwise color the facts of the case. Instead, the outside information is an erroneous statement of the law based on one or more juror's personal prior experiences. Though it is less than ideal to have a juror introduce erroneous information about the law, the prejudice that resulted is limited here because the incorrect communication merely informed jurors that a less than unanimous verdict on all counts would result in a hung jury and retrial. The erroneous statement did not lessen the prosecutor's burden of proof, create confusion regarding the meaning of dispositive terms like premeditation or deliberation, or have any bearing on the legal standard for finding the required elements for the charged crimes. In the absence of evidence suggesting that the erroneous information about the need for unanimity had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, the state court's denial of habeas relief on this ground was not objectively unreasonable.

### e.      Horse Trading

Petitioner initially alleged that the jury engaged in "horse trading" with respect to their votes, violating his rights to due process, a fair trial, and a unanimous jury verdict. In his traverse, however, petitioner candidly admits that "the evidence supporting this claim is inadmissible under the Federal Rules of Evidence, Rule 606(b), because it concerns jurors' mental processes and the subjective considerations that influenced their verdicts." Traverse at 37. Because this claim lacks any evidentiary support, the state supreme court's denial of habeas relief on this ground was not objectively unreasonable.

### f.      Lack of Adequate Instruction

Petitioner claims that the alleged failure to adequately instruct the jury deprived him of his rights to due process and a fair jury trial. To support his claim, petitioner offers various juror declarations stating that jurors found it difficult to hear the judge when he read them the jury instructions. Pet. Ex. G ¶ 2; Pet. Ex. H ¶ 2; Pet. Ex. I ¶ 2; Pet. Ex. J ¶ 2. Respondent points out that the record contains no evidence that any of the jurors had difficulty hearing the judge when he read the jury instructions. The juror declarations indicate that the jurors did not speak up because they knew they would be provided with the written jury instructions. Pet. Ex. H ¶ 2; Pet. Ex. ¶ 2. It is

**United States District Court**
For the Northern District of California

1  undisputed that the jury was in fact provided with a copy of the written jury instructions.  Petitioner

2  has provided no admissible evidence showing that the jury was not adequately instructed.[4]

3  Therefore, the state supreme court's denial of habeas relief on this ground was not objectively

4  unreasonable.

5              **3.        Restriction on Victim Impeachment**

6       Petitioner claims that the trial court's restriction of impeachment of the victim deprived him

7  of his rights to due process, to confrontation, and to present a defense.  The key issues in petitioner's

8  trial were whether the shooting was intentional and premeditated.  Davinder Singh, the victim, and

9  petitioner testified to different versions of what happened.  For example, Singh testified that during

10  his initial visit to the store, petitioner pointed a finger like a gun at him and said, "I'm going to be

11  back, and I'm going to kill you."  RT 462-63.  Petitioner denied this ever occurred.  RT 665.

12  Because these differences in their testimony relate to the key disputed issues–whether there was

13  intent and premeditation, petitioner argues that it was essential for his defense to be able to impeach

14  Singh's credibility.

15       Petitioner wanted to impeach Singh by introducing evidence that: (1) Singh had fled Canada

16  to escape criminal charges, and (2) he had made false statements under penalty of perjury in his

17  application for asylum in the United States.  The trial court excluded this impeachment evidence but

18  allowed petitioner to impeach Singh by pointing out inconsistencies in his testimony and by

19  presenting evidence that Singh had given a false name to police in order to hide his true identity.

20  The state court of appeal found that the trial court correctly excluded evidence as to the nature of the

21  Canadian criminal charges but erred in excluding evidence that Singh had made false statements in

22  his application for asylum in the United States.  Pet. Ex. Z at 16-17.  The state court then concluded

23  that the erroneous limitation of impeachment evidence in this case was harmless beyond a

24  reasonable doubt.  *Id.* at 18.

25       A criminal defendant has the constitutional right to confront witnesses and to have the

26  opportunity for  effective cross-examination.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79

27

28  [4]  The statements in the juror declarations about the jury's failure to consult the written jury
    instructions and their reliance on the foreman's chart are inadmissible under Federal Rule of
    Evidence 606(b).

1    (1986).  At the same time, "trial judges retain wide latitude . . . to impose reasonable limits on such

2    cross-examination based on concerns about, among other things, harassment, prejudice, confusion of

3    the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id.*  at

4    679.  "Because trial judges have broad discretion both to determine relevance and to determine

5    whether prejudicial effect or other concerns outweigh the probative value of evidence, [there is] a

6    Sixth Amendment violation only if . . . the trial court abused its discretion."  *Wood v. Alaska*, 957

7    F.2d 1544, 1550 (9th Cir. 1992) (citing *United States v. Feldman*, 788 F.2d 544, 554 (9th Cir.

8    1986)).

9         The state court of appeal's holding that the trial court did not abuse its discretion by

10   excluding impeachment based on the Canadian criminal charges is not contrary to or involve an

11   unreasonable application of clearly established federal law.  The state court correctly recognized that

12   evidence of pending criminal charges against Singh was admissible for impeachment only if it had

13   independent probative value regarding Singh's credibility. Pet. Ex. Z at 17.  Because the nature of

14   the Canadian charges had not been admitted by Singh or otherwise established by any other offer of

15   proof, the court found that such evidence "remained speculative in nature . . . had minimal probative

16   value . . . [and] was also cumulative to the remaining impeachment evidence."  *Id.*  Moreover,

17   "without definitive proof of the charges, admission of the collateral evidence of witness misconduct

18   would have entailed undue time to present and contest, confusion, and an unwarranted digression

19   from issues crucial to the case."  *Id.*  Thus, in affirming the trial court's exclusion of this evidence,

20   the state court of appeal identified the correct governing legal principles and applied those principles

21   to petitioner's case in a manner that was not objectively unreasonable.

22        In its opinion, the state court of appeal did not independently address the issue of whether the

23   trial court properly excluded evidence, not only of the nature of the criminal charges themselves, but

24   also of the fact that Singh left Canada while criminal charges were pending against him.  Petitioner

25   argues that the act of leaving the country to avoid pending criminal charges was an act of moral

26   turpitude in itself, independent of the criminal charges, and thus should have been admitted.

27   California courts have held that breaking a promise to return to custody is an act of dishonesty and

28   thus an act of moral turpitude.  *See, e.g., People v. Lee*, 229 Cal. App. 3d 1504, 1507-09 (1991)

1   (willful failure to return to custody from work or educational furlough is a breach of trust and thus

2   an act of moral turpitude).  It does not appear, however, that petitioner has any admissible evidence

3   that Singh was ever in custody or promised to return to custody.  It is debatable whether the act of

4   leaving Canada knowing that criminal charges are pending, without anything more, constitutes an

5   act of moral turpitude.  Moreover, even if it is an act of moral turpitude, it would not be an abuse of

6   discretion for the state court to hold that its exclusion was nonetheless warranted.  Evidence on this

7   issue is inextricably intertwined with evidence regarding the fact and nature of the Canadian

8   criminal charges.  As discussed above, the state court of appeal reasonably applied the governing

9   legal principles in affirming the trial court's exclusion of evidence regarding the Canadian criminal

10  charges.  It is not objectively unreasonable to exclude evidence of the fact that Singh left Canada

11  while charges were pending against him based on the same concerns about prejudice, confusion of

12  the issues, and speculative and cumulative evidence.  *Van Arsdall*, 475 U.S. at 679.

13          Though the state court found that the trial court had erred in excluding evidence about

14  Singh's false statements in his application for asylum, petitioner is entitled to habeas relief only if

15  this error had a "substantial and injurious effect or influence in determining the jury's verdict."

16  *Brecht*, 507 U.S. at 637.  The state court found that this error was harmless beyond a reasonable

17  doubt.  Pet. Ex. Z at 18.  In determining whether an erroneous limitation on impeachment was

18  harmless, courts are to consider various factors, which may include: "the importance of the witness'

19  testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence

20  of evidence corroborating or contradicting the testimony of the witness on material points, the extent

21  of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's

22  case." *Van Arsdall*, 475 U.S. at 684.  The state court cited several of these factors in explaining why

23  it concluded that the error was harmless in this case:

24          Appellant's cross-examination of the victim was not seriously compromised by the
            trial court's ruling.  The defense was permitted to vigorously challenge the victim's
25          credibility with instances of inconsistencies in his testimony.  Evidence of Singh's
            fabrication and concealment of his identity to the police during investigation of the
26          present crime demonstrated a character for dishonesty.  More importantly, the
            evidence of defendant's intent and premeditation was overwhelming.  Therefore, to
27          the extent the trial court erred by restricting the defense inquiry into the victim's false
            representations of his identity, the error was harmless beyond a reasonable doubt.

28
    Pet. Ex. Z at 18.

United States District Court
For the Northern District of California

1      Petitioner argues that the state court applied the wrong legal standard and unreasonably

2  determined facts in reaching its decision.  The court disagrees.  The state court of appeal reasonably

3  applied the governing legal principles to petitioner's case in reaching its conclusion that the trial

4  court's error was harmless.  Thus, the state court's finding of no prejudice is not contrary to and does

5  not involve an unreasonable application of clearly established federal law.  As for the state court's

6  factual findings, "a determination of a factual issue made by a State court shall be presumed to be

7  correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and

8  convincing evidence."  28 U.S.C. § 2254(e)(1).  Petitioner has failed to show by clear and

9  convincing evidence that any of the state court's factual findings were unreasonable in light of the

10 evidence presented in the state court proceeding.  Accordingly, petitioner is not entitled to habeas

11 relief on this ground.

12              **4.      Prosecutorial Misconduct**

13      Petitioner claims that prosecutorial misconduct deprived him of various constitutional rights.

14 The alleged prosecutorial misconduct falls into three general categories: (1) questioning by the

15 prosecutor that related to irrelevant and inadmissible facts or unfairly attacked petitioner, (2)

16 argumentative questioning by the prosecutor during petitioner's cross-examination, and (3)

17 comments by the prosecutor about matters not in evidence during closing argument.

18      With respect to the first category of alleged misconduct, the state court of appeal held that

19 petitioner's claim of prosecutorial misconduct was barred because timely objection had not been

20 made at trial, when an appropriate admonition would have cured any harm caused by the

21 prosecutor's questions.  Pet. Ex. Z at 20.  Under California law, "[a]s a general rule a defendant may

22 not complain on appeal of prosecutorial misconduct unless in a timely fashion – and on the same

23 ground – the defendant made an assignment of misconduct and requested that the jury be

24 admonished to disregard the impropriety."  *People v. Samayoa*, 15 Cal. 4th 795, 841 (1997) (citing

25 *People v. Berryman*, 6 Cal. 4th 1048, 1072 (1993)).  Having failed to preserve this issue for appeal,

26 petitioner cannot now seek habeas relief on this basis absent a showing of cause and prejudice,

27 which he has failed to establish.  *Engle v. Isaac*, 456 U.S. 107, 129 (1982).

28

1    With respect to the second category of alleged prosecutorial misconduct, petitioner objects to

2 argumentative questioning by the prosecutor because it made petitioner appear evasive.  The state

3 court of appeal found that although the challenged questions were improper, they did not rise to the

4 level of prosecutorial misconduct.  Prosecutorial misconduct is found only when the prosecutor's

5 comments or questioning "so infected the trial with unfairness as to make the resulting conviction a

6 denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

7 *DeChristoforo*, 416 U.S. 637, 643 (1974)).  The prosecutor's questions, though argumentative, did

8 not contaminate the trial with such unfairness that the resulting conviction would be a denial of due

9 process.  Therefore, the state court's determination that there was no prosecutorial misconduct is not

10 contrary to or involve an unreasonable application of clearly established law, nor is it based on an

11 unreasonable determination of facts.

12    With respect to the third category of alleged prosecutorial misconduct, petitioner objects to

13 statements by the prosecutor in closing argument that he claims commented on matters not in

14 evidence. In particular, the prosecutor argued that: (1) when people are accused of crimes and realize

15 they are in trouble, "they do what they can to try to save their skin.  They try to minimize their

16 conduct and their responsibility"; and (2) it does not make sense to look away from a person's hands

17 if you think that person is reaching for a gun.  RT 833-34, 894.  The state court held that the

18 prosecutor's comments were within the scope of permissible prosecutorial arguments and cited

19 *People v. Hill*:

20    a prosecutor is given wide latitude during argument. The argument may be vigorous
   as long as it amounts to fair comment on the evidence, which can include reasonable
21 inferences, or deductions to be drawn therefrom.  It is also clear that counsel during
   summation may state matters not in evidence, but which are common knowledge or
22 are illustrations drawn from common experience, history or literature. A prosecutor
   may vigorously argue his case and is not limited to 'Chesterfieldian politeness,'  and
23 he may use appropriate epithets.

24 17 Cal. 4th 800, 819 (1998) (internal citations and quotations omitted).  Pet. Ex. Z at 21.  Likewise,

25 the Ninth Circuit has agreed that the prosecution has considerable latitude in making its closing

26 argument, including the freedom to comment on evidence and to argue reasonable inferences based

27 on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).  These statements in

28 the prosecutor's closing argument were comments on the evidence based on reasonable inferences

and common sense.  The state court's determination that there was no prosecutorial misconduct is not contrary to and does not involve an unreasonable application of clearly established law, nor is it based on an unreasonable determination of facts.  Accordingly, petitioner is not entitled to habeas relief on this ground.

### 5.     Admission of Evidence of Victim's Injuries

Petitioner claims that admission of evidence of the full extent of the victim's injuries violated his rights to a fair trial and an impartial jury.  Petitioner was charged with premeditated attempted murder with an enhancement for inflicting great bodily injury, among other offenses.   Petitioner had sought to exclude evidence relating to the full extent of the victim's injuries in a motion in limine. RT 218.  It is undisputed that the nature and extent of the victim's actual injuries are relevant to the great bodily injury enhancement.  Thus, in seeking to exclude this evidence, petitioner had offered to stipulate to the great bodily injury enhancement.  *Id.*  Petitioner concedes that evidence up to and including the time of the shooting, including the location of the entry wound and the path of the bullet in the body, are relevant in determining intent to kill (a required element for the premeditated attempted murder charge).  However, he argues that other evidence of the injuries actually suffered by the victim had no relevance and should have been excluded.  The trial court allowed the prosecution to offer evidence relating to the victim's pain and suffering and the nature of his internal injuries, including both the emergency surgery he underwent right after being shot and the later outpatient surgery to remove the bullet from his body.  RT 247, 441-45, 454-55.

The state court of appeal found that evidence relating to the victim's later outpatient surgery to remove the bullet was irrelevant to the premeditated attempted murder charge but held that this error was not prejudicial to petitioner.  Pet. Ex. Z at 19.  As for the rest of the evidence relating to the victim's wounds and the emergency surgery he received, the state court held that the trial court properly admitted this evidence because "[t]he nature and extent of the victim's injuries reflected upon the intent and premeditation that accompanied the act."  *Id.*  The state court cites three California cases as supporting this contention.  However, these cases only stand for the proposition that when the victim is dead, the victim's injuries are relevant for showing what acts the perpetrator took to kill the victim, and in turn, the manner of killing may be sufficient to show intent,

United States District Court
For the Northern District of California

premeditation, and deliberation.  In *People v. Davis*, there was evidence showing that the victim had been strangled for a period of up to five minutes.  10 Cal. 4th 463, 510 (1995).  The court held that a rational fact finder could infer from the manner in which the victim was killed that the perpetrator had a deliberate plan to kill.  *Id.*  Likewise, in *People v. Fenenbeck*, the court held that where the victim had been mutilated, brutalized, and stabbed over seventy times, the jury could find premeditation and deliberation based on the way in which the victim had been killed.  46 Cal. App. 4th 1688, 1703 (1996).  In *People v. Daya*, the court merely stated, "[g]iven the wanton nature of the injuries, the jury may have entertained a reasonable doubt the execution was preplanned and deliberate." 29 Cal. App. 4th 697, 713 (1994).  In each of these cases, the court found the acts that the perpetrator took, not the pain and suffering of the victim, to be relevant to the issues of intent, deliberation, and premeditation.  Because the victims were dead, their injuries provided essential evidence of the acts taken by the perpetrators.

In this case, there is no need to look to the victim's injuries to understand what the petitioner did.  The facts of the shooting itself were not in dispute. Petitioner admitted on the stand that he pointed a loaded gun at the center of Singh's chest and shot him while standing only five or six feet away.  RT 705, 766-67.  Thus, to the extent that Singh's injuries provide indirect evidence of what occurred in the store, this evidence has little additional probative value.  Furthermore, Singh's pain and suffering, the gruesome nature of the internal injuries he actually sustained, and the surgeries he underwent shed no light on petitioner's state of mind at the time of the shooting.  Therefore, with respect to the premeditated attempted murder charge, the probative value of the full extent of Singh's injuries (excluding the location of the entry wound and the path of the bullet through the body) was substantially outweighed by the risk of unfair prejudice.

Though evidence of the victim's injuries has more probative value on the great bodily injury enhancement, petitioner had offered to stipulate to this enhancement.  In *Old Chief v. United States*, the Supreme Court held that it was an abuse of discretion to reject an offer by the defendant to stipulate to the fact of a prior conviction and to admit the full record of a prior judgment when this evidence carried the risk of unfair prejudice and served no purpose other than to prove the fact of the prior conviction.  519 U.S. 172, 174 (1997).  In light of the holding and the reasoning in *Old Chief*,

United States District Court
For the Northern District of California

1   the trial court abused its discretion in admitting evidence of the full extent of Singh's injuries.  As in

2   *Old Chief*, the disputed evidence should have been excluded because the risk of unfair prejudice

3   substantially outweighed the probative value, if any, of that evidence, due to petitioner's offer to

4   stipulate to the great bodily injury enhancement.[5]  Because the state court confronted a set of facts

5   that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a

6   different result from Supreme Court precedent, the state court's ruling was contrary to clearly

7   established federal law.  *Early*, 537 U.S. at 8.

8          To qualify for habeas relief, the petitioner must show that this error had a "substantial and

9   injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  Petitioner

10  has not met this burden.  The court agrees with the state court's finding that "the evidence of

11  defendant's intent and premeditation was overwhelming."  Pet. Ex. Z at 18.  Petitioner testified that

12  he was angry after being overcharged for orange juice and came up with the idea of returning to the

13  store with his gun to scare Singh.  RT 666-67.  When he got home, he put on a holster, put five

14  hollow-point bullets into his gun, and placed the gun in the holster.  RT 751, 755, 760.  Petitioner

15  admitted on the stand that when he returned to the store, he pointed the loaded gun at the center of

16  Singh's chest, and upon seeing Singh reach behind his back, he shot Singh in the chest while

17  standing only five or six feet away.  RT 705, 766-69. In light of this compelling evidence of intent,

18  premeditation, and deliberation, the court finds that petitioner has failed to demonstrate actual

19  prejudice from the erroneous admission of evidence of the full extent of the victim's injuries.

20  Therefore, petitioner is not entitled to habeas relief on this ground.

21  ─────────────────────

22  [5]  The court recognizes that *Old Chief* limited its holding to cases involving proof of felon status,
    519 U.S. at 183 n.7, and acknowledges that there is a difference between proving felon status, which
23  is based on an event completely separate and distinct from the current offense, and proving a great
    bodily injury enhancement, which is based on actual injuries suffered as a result of conduct directly
24  related to the current offense.  Nonetheless, the court finds that this difference is immaterial because
    the Supreme Court's reasoning in *Old Chief* applies equally to the great bodily injury enhancement.
25  Since the prosecution is free to tell a full, continuous narrative up until the time of shooting,
    replacing evidence of the full extent of the victim's injuries with a stipulation "leaves no gap in the
26  story of a defendant's subsequent criminality" and does not "displace[] a chapter from a continuous
    sequence of conventional evidence nor come[] across as an officious substitution, to confuse or
27  offend or provoke reproach."  *Id.* at 191.  Because "the functions of the competing evidence [the
    injury evidence and the stipulation] are distinguishable only by the risk inherent in the one and
28  wholly absent from the other," the injury evidence, with its potential for unfair prejudice, is
    inadmissible.  *Id.*

### 6.      Cumulative Effect

Though there were some errors in petitioner's trial, petitioner has failed to establish prejudicial error with the possible exception of his claim relating to the plea offer.  Petitioner's trial "was not perfect – few are – but neither was it fundamentally unfair." *Darden*, 477 U.S. at 183.  The court finds that the cumulative effect of the alleged constitutional violations did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  Accordingly, the court denies habeas relief on this ground.

### III. ORDER

For the foregoing reasons, the court will hold an evidentiary hearing on a date agreed upon by the parties and available on the court's calendar on the disputed factual issues relating to petitioner's claim that he was denied effective assistance of counsel based on trial counsel's failure to advise him of a plea offer.  The parties should contact Jackie Garcia, the courtroom deputy clerk, 408/535-5375, to schedule the date for the evidentiary hearing.  The parties should also exchange and file witness and exhibit lists at least ten days before the hearing.  The court denies the petition for writ of habeas corpus in all other respects.


DATED:      3/19/10                                    *Ronald M Whyte*
                                                       RONALD M. WHYTE
                                                       United States District Judge

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Petitioner:**

3  Neoma Kenwood              nkenwood@sbcglobal.net
   Clifford Gardner           casetris@aol.com

4  **Counsel for Respondent:**

5  Frances Marie Dogan        Frances.Dogan@doj.ca.gov

6

7  Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.

8

9

10

**Dated:** _____3/19/10_____          _____CCL_____
11                                        **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California